**Norman ARCHER, Petitioner-Appellant,**

**v.**

**COMMISSIONER OF CORRECTION OF the STATE OF NEW YORK and the Attorney General of the State of New York, Respondents-Appellees.**

**No. 875, Docket 80–2365.**

United States Court of Appeals, Second Circuit.

Argued March 13, 1981.

Decided April 8, 1981.

Irving Anolik, New York City, for petitioner-appellant.

Mark M. Baker, Sp. Asst. Atty. Gen., New York City (Roderick C. Lankler, Deputy Atty. Gen., Sp. State Prosecutor, New York City), for respondents-appellees.

Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal from the denial of an application for a writ of habeas corpus in the District Court for the Southern District of New York is a sequel to our decision in *United States v. Archer*, 486 F.2d 670 (2 Cir. 1973), rehearing denied, *id.* at 683 (1973), familiarity with which is assumed. We there reversed Archer's conviction under the Travel Act, 18 U.S.C. § 1952, for using and conspiring to use interstate or foreign telephone facilities in aid of a bribery scheme and ordered the indictment to be dismissed. The ground for our decision was that there had been no sufficiently meaningful use of such facilities in connection with the essentially local crime committed by Archer, an assistant district attorney for Queens County, N.Y., of accepting a bribe to prevent a grand jury in that county from returning an indictment.

In November, 1973, some two months after our denial of the Government's petition for rehearing, Archer was indicted by an Extraordinary Term Grand Jury in Queens County for the crimes of conspiracy, bribe receiving and receiving rewards for official misconduct, New York Penal Law, former §§ 105.05, 200.10, 200.25 (McKinney's 1967). The indictment came about at the instance of a Special Prosecutor appointed by Governor Rockefeller to investigate corruption of the sort disclosed by the Knapp Commission infecting New York City's criminal justice system, see 486 F.2d at 683 n.1. After an unsuccessful attempt to stop the prosecution in its tracks on the grounds of prosecutorial misconduct in concocting the crime described in our previous opinion, 486 F.2d at 672–74, and of double jeopardy, see *Matter of Klein v. Murtagh*, 44 A.D.2d 465, 355 N.Y.S.2d 622 (2d Dept.), aff'd, 34 N.Y.2d

988, 360 N.Y.S.2d 416, 318 N.E.2d 606 (1974), and the trial court's denial, after a hearing, of a further motion concerning prosecutorial misconduct, Archer was convicted, his conviction was affirmed on the bribery counts, *People v. Archer*, 68 A.D.2d 441, 417 N.Y.S.2d 507 (2d Dept. 1979), aff'd, 49 N.Y.2d 978, 428 N.Y.S.2d 949, 406 N.E.2d 804 (1980), and certiorari was denied, —— U.S. ——, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980).

Archer then filed a petition for habeas corpus under 28 U.S.C. § 2254 in the District Court for the Southern District of New York. He raised three constitutional claims:

(1) That the prosecutorial action constituting the basis for his conviction was so outrageous as to constitute a denial of due process of law;

(2) That the state prosecution violated his right under the double jeopardy clause of the Fifth Amendment as incorporated into the Fourteenth; and

(3) That the State's postponing his indictment until November, 1973, seventeen months after his arrest on the federal charge in June, 1972, constituted a denial of his constitutional right to a speedy trial.

Judge Duffy denied the petition without opinion but granted a certificate of probable cause. We affirm.

Archer's first argument takes off from Part II of our former opinion, 486 F.2d at 674–77. We began by quoting the eloquent passage from Justice Brandeis's famous dissent in *Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928), joined by Justices Holmes and Stone. Justice Brandeis there urged, as an alternative to his view that Olmstead's conviction should be reversed because the wiretapping practiced upon him by federal officers violated the Fourth Amendment, that the conviction should also be set aside because the Government was seeking to avail itself of the fruits of wiretapping by its agents, a method of investigation which constituted a crime under the laws of the State of Washington. We noted that while Justice Bran-

deis' view with respect to the Fourth Amendment had ultimately been vindicated in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), "there has been no corresponding adoption of the second, based on the criminality of the acts of the Government agents" under state law. 486 F.2d at 675. We discussed *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), where the Court, speaking through Justice Rehnquist, had rejected a claim of undue governmental participation in the crime but had suggested, 411 U.S. at 431–32, 93 S.Ct. at 1642–1643, that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ...." After noting the Government's contention that the citation of *Rochin* showed that the Court was thinking only of shocking conduct directed at the defendant, not present in *Archer's* case, we said:

We are not sure how we would decide this question if decision were required. Our intuition inclines us to the belief that this case would call for application of Mr. Justice Brandeis' observation in *Olmstead*.

486 F.2d at 676. However, we expressly declined to decide that issue, since we reversed the conviction and dismissed the indictment on another ground, as stated above. Archer says we must decide the issue now.

■ Archer is mistaken. Our opinion dealt, as had Justice Brandeis' dissent in *Olmstead*, with a federal prosecution. Both were concerned with a proper principle of federal criminal procedure, not with a question of due process applicable to the states. Justice Brandeis made this entirely clear when he introduced this portion of his dissent with the phrase: "Independently of the constitutional question", 277 U.S. at 479, 48 S.Ct. at 573. Indeed, since he was dealing with violations of a state law, which

had complete analogues in some states, partial ones in others, and none in the rest, see 277 U.S. at 479–81, n.13, 48 S.Ct. at 572, 573, n.13, he could not possibly have been thinking in terms of due process—a fundamental principle protecting all persons regardless of state law. The discussion in our previous opinion relating to Archer was similarly limited. It may be, as the Supreme Court indicated in *Russell, supra,* 411 U.S. at 431–32, 93 S.Ct. at 1642, 1643, and Justice Powell agreed in his opinion (joined by Justice Blackmun) in *Hampton v. United States,* 425 U.S. 484, 493, 96 S.Ct. 1646, 1651, 48 L.Ed.2d 113 (1976), that some law enforcement practices may be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction". *Rochin v. California, supra,* 342 U.S. 165, 72 S.Ct. 205, was such a case, as were the involuntary confession cases relating to state convictions insofar as these rested on a desire to deter offensive police conduct. See, e. g., *Watts v. Indiana,* 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); cf. *Rochin v. California, supra,* 342 U.S. at 172–73, 72 S.Ct. at 209–10; Kamisar, LaFave & Israel, Modern Criminal Procedure, 554–57 (5th ed. 1980). We note, however, that in all these cases, unlike Archer's, the impermissible police conduct was inflicted directly upon the defendant. Leaving open the question whether a case might arise where conduct of law enforcement officers not thus inflict-

ed was so outrageous as to constitute a denial of due process, we join with the New York courts, see *People v. Archer, supra,* 68 A.D.2d at 447–49, 417 N.Y.S.2d at 511–13, in concluding that the conduct here at issue did not reach that level. We thus still need not and do not decide the non-constitutional question whether the conduct in this case would have barred a federal prosecution of Archer.

■ Archer's argument based on the double jeopardy clause is also without merit. The "dual sovereignty" doctrine, as stated in *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), recently reaffirmed by a unanimous Court in *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), allows the state prosecution to proceed. See also *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), reaching the same conclusion where the state prosecution came first.[1] Archer's double jeopardy argument does not even pass muster in New York, which has restricted the *Bartkus* rule by statute but still allows a second prosecution in a case such as this where the prior indictment in another jurisdiction was dismissed for lack of evidence of an element, the use of interstate or foreign communications facilities, which is not an element of the New York offense. See New York CPL 40.20(f) and *Klein v. Murtagh, supra,* 44 A.D.2d at 470–73, 355 N.Y.S.2d at 627–30.[2] We find

1. In light of *Wheeler* we have no occasion to consider the argument made by petitioner and, in greater depth, by Judge Adams in *United States v. Grimes,* 641 F.2d 96 (3 Cir. 1981), that the logical underpinnings of *Bartkus* and *Abbate* have been undermined by subsequent developments, notably the decision in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

2. The federal indictment charged Archer in language closely tracking 18 U.S.C. § 1952, which makes it unlawful to use interstate or foreign facilities with intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on" of certain unlawful activities, including bribery, and thereafter to perform or attempt to perform such intended acts. To convict Archer under that indictment it was not necessary to prove, as it was in the state prosecution, that

Archer had actually committed the unlawful activity, but only that he did or attempted to promote, manage, establish or carry it on. Thus, apart from the dual sovereignty doctrine, the case might come within the formulation of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Although stated in the context of a prohibition of consecutive sentences after a single trial, this has become the established test for double jeopardy as well. See *Brown v. Ohio,* 432 U.S. 161, 166 & n.6, 97 S.Ct. 2221, 2226 & n.6, 53 L.Ed.2d 187 (1977); *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). However, it is unnecessary to decide whether the State could prevail on this additional ground since the dual sovereignty doctrine is fatal to Archer's claim.

**48**

unpersuasive petitioner's argument that the State should be regarded as having shared in the federal indictment because of the participation of the New York City Police Commissioner and a New York City policeman in the faked crime which ultimately led to Archer's acceptance of a bribe. Under New York law, Criminal Procedure Law § 1.20; County Law §§ 700, 927, authority to make charges of felonies is placed in the grand jury, and authority to prosecute all offenses is vested in the county district attorneys and, occasionally, in a special prosecutor. The dabbling of the Police Commissioner and a policeman in the play staged by the federal prosecutors does not implicate New York as a sovereign.

■ The argument with respect to pre-indictment delay can be quickly dispatched. Recognizing that the Sixth Amendment speedy trial right does not accrue until a defendant is accused and that pre-accusation delay short of the period of limitations affords ground for constitutional relief only on a showing of actual prejudice amounting to a denial of due process, *United States v. Marion*, 404 U.S. 307, 313–20, 92 S.Ct. 455, 459–463, 30 L.Ed.2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), Archer contends that his arrest in June, 1972 by federal officers was in effect a state arrest by virtue of the participation of state officers in the faked crime. We reject the factual claim for reasons similar to those stated above with respect to state participation in the federal indictment. Moreover, even if we were to accept it, Archer has shown no prejudice from the delay between June, 1972 and November, 1973. The evidence he was assembling in order to defend against the federal charge was precisely what he would need to enable him to defend against the later state indictment. As a practical matter the last thing Archer could have wanted during the pendency of his federal indictment was to be obliged to defend against a prosecution by the State. The interval between our denial of the Government's petition for rehearing on September 26, 1973 and the filing of the State charges in November was clearly not unreasonable.

Affirmed.