**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George SNYDER, Defendant-Appellant.**

**No. 338, Docket 80–1322.**

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1981.

Decided Jan. 15, 1982.

---

Mark Lemle Amsterdam, New York City, for defendant-appellant.

Kenneth F. McCallion, Sp. Atty., U. S. Dept. of Justice, E. D. N. Y., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Thomas P. Puccio, Attorney-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, E. D. N. Y., Brooklyn, N. Y.), for plaintiff-appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and CONNER,* District Judge.

FEINBERG, Chief Judge:

George Snyder appeals from a judgment of conviction in the United States District Court for the Eastern District of New York, after a jury trial before Judge Jacob Mishler, on two counts of embezzling over one million dollars from the pension and welfare funds of Local 806, International Brotherhood of Teamsters (the Union), in violation of 18 U.S.C. § 664. Appellant was

* Honorable William C. Conner, United States District Judge for the Southern District of New York, sitting by designation.

sentenced on each count to a five year prison term, to run concurrently, and a fine of $10,000. On appeal, he argues that preindictment delay violated his due process rights, that the district judge improperly denied, without a hearing, appellant's motion to suppress evidence, that the judge erred in his charge to the jury and that the sentence imposed upon appellant was improper. Finding none of these contentions persuasive, we affirm the judgment of the district court.

## I. Facts

There is no claim here of insufficiency of evidence, so that only a brief summary is required of the evidence upon which the jury found appellant guilty. During the period from January 1975 to February 1977, appellant was the Secretary-Treasurer and chief operating officer of the Union as well as Chairman of the Trustees of the Union Health and Welfare Fund (Welfare Fund) and, until September 1976, Chairman of the Trustees of the Union Pension and Retirement Trust Fund (Pension Fund). The Union represented about 2,000 workers in approximately 120 businesses in the New York metropolitan area. Pursuant to applicable statute, half of the Trustees in each Fund were union officers and employees and half were executives of companies whose employees were covered by the Funds. However, at each of the trustee meetings of the Funds, appellant as chairman controlled the agenda, the discussion and the motions.

At a joint meeting of the two Funds in late February 1976, appellant's annual salary for each Fund was increased from $20,000 to $30,000, effectively retroactively for almost 14 months, to January 1975. In May 1975, at another joint trustee meeting, appellant's salary was increased to $55,000 for each Fund. Thus, during the period covered by the indictment, appellant's authorized salary from the two Funds was slightly over $185,000. Appellant also received in this period substantial increases in his salary as Secretary-Treasurer of the Union, so that by mid-December 1976, he was paid in that position at an annual rate of $75,000 per year plus $15,000 in expenses.

Along with these healthy salaries, starting in January 1975 and continuing until February 1977, appellant periodically directed the Union office manager to draw checks payable to him from the Funds. The explanation was that these were "advance" salary checks. Over the two-year period, there were 416 such checks, 240 from the Welfare Fund, totalling over $750,000, and 176 from the Pension Fund, amounting to over $448,000. There was thus furnished to appellant in two years, in addition to his various salaries, about $1.2 million. These "advances" against future salaries extended in theory at least until 1990. Although all salary checks required two signatures—one from an employer trustee and one from a union trustee—the second signature on many of these "advance" checks was that of a union business agent, and the employer trustee often signed checks in blank.

In the spring of 1976, the accountant for the Funds understandably expressed concern to appellant about the extent of his "advance" salary payments. In May 1976, appellant called a joint meeting of the trustees of the Fund, which was attended by appellant and Irving Rosenzweig, an employer trustee. All the other trustees had resigned the year before after an investigation by the New York State Department of Insurance. At the May 1976 meeting, appellant told Rosenzweig that he wanted to put into effect a severance pay plan for the officers and office employees of the Union and the Funds. Pursuant to the provisions of the plan, as reflected in the minutes of the meeting, the only persons eligible for severance pay were appellant and his son, and appellant was entitled to lump sum payments of over $1.2 million from the two Funds upon retirement.

Count One of the indictment charged appellant with embezzling $648,723 from the Welfare Fund, representing the difference between the total amount of salary checks he received ($752,900) and the authorized salary ($104,173) for the relevant period, according to the minutes. Count Two

charged embezzlement of $367,150 from the Pension Fund, computed in the same manner. Defendant did not testify or call any witnesses. The principal theories of the defense were that there was no criminal intent, since all disbursements were recorded in the records of the Funds, which were available for inspection by the other trustees and were reported in the annual statements to the United States Department of Labor, and that the other trustees must either have authorized or ratified the advances. Similarly, it was argued that the $1.2 million in severance benefits authorized in May 1976 validated any excess salary payments since appellant allegedly had a good faith intent to "offset" the latter against the former.

## II. Discussion

### Preindictment delay

 Appellant's first claim on appeal is that his motion to dismiss the indictment should have been granted because the government intentionally delayed seeking an indictment to gain an advantage and to prejudice appellant, thus violating his fifth amendment right to due process. Citing *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) and *United States v. Lovasco*, 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977), the government responds that there is no right to a speedy indictment, so long as the statute of limitations is not transgressed, which is not suggested here, and that to establish a due process violation appellant must actually show prejudice and delay for improper reasons, which conditions appellant did not meet here. The parties engage in a desultory debate over whether, as appellant urges, one of these factors alone suffices, e.g., appellant cites a pre-*Lovasco* case in the Eighth Circuit for that proposition, *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976). We believe that appellant is wrong in this regard, *United States v. Lane*, 561 F.2d 1075, 1077 (2d Cir. 1977). But in any event, the due process argument must fail because appellant has not shown either actual prejudice or intentional governmental delay for tactical

advantage. *Archer v. Commissioner of Correction of New York*, 646 F.2d 44, 48 (2d Cir. 1981); *United States v. Daley*, 454 F.2d 505, 508 (1st Cir. 1972).

Appellant makes much of loss of recollections by various witnesses during the trial, but most of these were of no moment, i.e., recollections could have been refreshed by reference to documentary evidence, or the lack of recollection related to collateral issues. In any event, a showing that memories have dimmed because of passage of time does not ordinarily establish substantial prejudice. *United States v. King*, 560 F.2d 122, 131 (2d Cir.), cert. denied sub nom. *Boucher v. United States*, 434 U.S. 925, 98 S.Ct. 404, 54 L.Ed.2d 283 (1977); *United States v. Finkelstein*, 526 F.2d 517, 526 (2d Cir. 1975), cert. denied sub nom. *Scardino v. United States*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 960 (1976). This is particularly true where the failure to recall is by prosecution witnesses, as in this trial where appellant called no witnesses at all. He does claim, however, that the delay in indictment did hurt him because two trustees he would have called had died. But one of these trustees apparently had submitted his resignation as a trustee in February 1975 before appellant's first salary increase and could not have authorized the $1.2 million in advances, and the other died before September 1976, over three years before the indictment in December 1979, so that the delay in that period did not prejudice the defense with regard to him.

Similarly, there was no showing that "the reasons for the delay" in indictment, *United States v. Lovasco*, 431 U.S. at 790, 97 S.Ct. 2048, were to obtain an improper tactical advantage. The Department of Labor began an investigation into the excessive salary payments to appellant in the summer of 1976 with an audit of the records of the Funds. In January 1977, the Department commenced a civil action against appellant and his fellow trustees under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. This action was tried in the Eastern District before Judge Pratt in February 1979 and

resulted in a judgment in August against appellant of $1.5 million, which was never recovered.[1] A grand jury investigation was commenced in July 1978 of many aspects of the transactions involving the Funds, the Union and related entities and officers, including the payments that resulted in the indictment in December 1979. It is clear from the record that the charges here were a part of a larger investigation, which the government required time to develop. See *United States v. Iannelli,* 461 F.2d 483 (2d Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 310, 34 L.Ed.2d 243 (1972). Under these circumstances, there is simply no merit to the charge that the government was intentionally harassing defendant, cf. *United States v. Mallah,* 503 F.2d 971, 989 (2d Cir. 1974), by deliberately holding off on indictment. The denial of the motion to dismiss on the ground of preindictment delay was entirely proper.

### The motion to suppress

■ Appellant also claims that the district court erred in denying without a hearing his motion to suppress the "fruits" allegedly obtained unlawfully by a Department of Labor investigation in 1974. It is not clear what the claimed unlawfulness consisted of, or what was improperly seized or what the illegal fruits of that seizure were. But the argument need not detain us long. The records examined in 1974 were union business records, required to be kept by law, 29 U.S.C. § 436, and subject to inspection by the Department of Labor. Appellant had no reasonable expectation of privacy in these records, *Rakas v. Illinois,* 439 U.S. 128, 140–48, 99 S.Ct. 421, 428–32, 58 L.Ed.2d 387 (1978), and therefore could not show that the inspection violated his personal fourth amendment rights. Appellant's reliance on the Supreme Court's earlier decision in *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), is misplaced. Judge Mishler's ruling was therefore correct. See *United States v. Gordon,* 655 F.2d 478, 483 (2d Cir. 1981).

### Reference to standards of fiduciaries

■ Appellant also contends that he was denied a fair trial because the trial judge introduced standards of civil liability as a basis for imposing criminal liability under 18 U.S.C. § 664, reproduced in the margin.[2] The crux of this argument is that the judge referred in his charge to the fiduciary standards set forth in ERISA, 29 U.S.C. §§ 1104, 1106, 1108. The argument is without merit.

The issue before the jury was whether appellant knowingly and willfully embezzled, stole or converted to his own use moneys belonging to the Funds. Appellant did not deny receiving from the Funds the vast sums that were charged. The only real question, as both sides recognized, was whether he took them with the requisite criminal intent. In this context, the government introduced evidence that appellant knew what his fiduciary duties were and consciously violated those duties. Appellant's main defense was that since every transaction was recorded in the books, his lack of criminal intent was apparent.

The judge's charge was clear on the key issue and told the jury, among other things, that in order to convict they had to be convinced beyond a reasonable doubt that defendant "was aware" that he was receiving money "to which he was not entitled and knowing that, ... deliberately ... appropriated the money to his own use." The

---

1. The district court's appointment of a receiver for the Funds was affirmed in *Marshall v. Snyder,* 572 F.2d 894 (2d Cir. 1978).

2. 18 U.S.C. § 664 provides:

 Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

 As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

---

---

**691**

court also instructed the jury to consider whether appellant had a good faith belief that the salary payments were authorized or would have been ratified retroactively by the trustees, *United States v. Santiago*, 528 F.2d 1130, 1133–34 (2d Cir.), cert. denied, 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976); cf. *United States v. Ottley*, 509 F.2d 667 (2d Cir. 1975), and cautioned that the government could overcome evidence of appellant's good faith belief only by proof of a criminal intent beyond a reasonable doubt.

It is clear, then, that there was an issue of fact for the jury regarding appellant's intent. While the record-keeping stressed by appellant undoubtedly tended to show his good faith, the issue of intent remained open. The government could still show appellant's awareness that no matter how carefully form was observed, he was not entitled to the huge sums he received. And as part of that proof, appellant's duties as a fiduciary to act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), of the Funds and his knowledge of his responsibilities were undoubtedly relevant. We agree with appellant that he should not be convicted of a crime merely because he breached his civil fiduciary duties. But Judge Mishler was careful to make that point, and we have no doubt that the jury grasped it. Cf. *United States v. Newman*, 664 F.2d 12, 19 (2d Cir. 1981); *United States v. Andreen*, 628 F.2d 1236, 1245–46 (9th Cir. 1980); *United States v. Ford*, 632 F.2d 1354, 1367–68 n. 13 (9th Cir. 1980), cert. denied sub nom. *Armstrong v. United States*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *United States v. Rubin*, 591 F.2d 278, 283 (5th Cir.), cert. denied, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979). Under all the circumstances, we find no reversible error in this aspect of the case.

#### The sentence

Finally, appellant objects to his sentence because the judge allegedly considered improper factors in imposing it and "failed to particularize" the sentence. By this we assume that appellant means that the judge sentenced appellant as an example to others and that this was improper. The argument comes close to being frivolous. Of course, the judge could take into account the deterrent effect on others in imposing a sentence on a union official convicted of embezzling huge sums from funds ostensibly created for the benefit of many workers.

We have considered appellant's remaining arguments, but none require discussion. We affirm the judgment of the district court.