842 F.2d 1293
 25 Fed. R. Evid. Serv. 288
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mike HAKAJ, a/k/a Mehemet Hakanjin, Defendant-Appellant.
 No. 87-5035.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 5, 1988.
Decided March 21, 1988.
 
 William H. Cleaveland (Lichtenstein, Thomas & Cleaveland, on brief), for appellant.
 Wayne O. Withers, Jr., Third-Year Law Student (John P. Alderman, United States Attorney; Thomas Jack Bondurant, Jr., Assistant United States Attorney, on brief), for appellee.
 Before WIDENER and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Mike Hakaj appeals his conviction of conspiracy to fire bomb his restaurant in violation of 18 U.S.C. Sec. 844(i) and 18 U.S.C. Sec. 371 and of traveling in interstate commerce for an unlawful activity in violation of 18 U.S.C. Secs. 1952(a)(2) and (3). We affirm.
 
 
 2
 * Mike Hakaj was the owner of the Italian Village Restaurant in Boone, North Carolina. The government presented evidence that Hakaj, in order to collect up to $229,000 in insurance proceeds, drove from Boone, North Carolina, to Richlands, Virginia, met with Ghoni Bardh, and promised to pay him $50,000 to destroy the restaurant. Hakaj agreed to assist Bardh after he hesitated to complete the job on his own.
 
 
 3
 On July 20, 1981, an explosion and fire destroyed the restaurant. An expert testified that the fire was deliberately set by someone who spread gasoline throughout the restaurant. While no one actually witnessed Hakaj and Bardh set the fire, witnesses testified that they saw and heard Hakaj in the restaurant after closing time and observed his car backed up to the service door of the restaurant shortly before the explosion.
 
 
 4
 Bardh was injured in the fire and went to New York for treatment at a burn center. Frank Bisaki and Gjon Berisha testified that, while in the burn center, Bardh spoke with them about the conspiracy to destroy the restaurant. Berisha testified that Bardh asked for assistance from him in obtaining the $50,000 payoff from Hakaj.
 
 
 5
 In November, 1981, Hakaj was tried and acquitted in North Carolina on state charges of conspiracy to commit arson. Bardh, who was never prosecuted for the crime, testified against Hakaj at the state trial. Bardh was murdered in a Clarkstown, New York, hotel in December, 1983.
 
 
 6
 In June, 1986, Hakaj was indicted on the federal charges related to his role in the restaurant fire. With Bardh no longer available as a witness, the government introduced his testimony in the state trial as evidence in the federal trial, and Berisha and Bisaki testified about Bardh's statements to them while in the burn center. Hakaj was convicted and now appeals.
 
 II
 
 7
 Hakaj was indicted within the applicable five-year statute of limitations. See 18 U.S.C. Sec. 3282. Nevertheless, his main argument on appeal is that the government violated his fifth amendment right to due process of law by delaying the indictment for 59 months following the restaurant fire. This court, referring to United States v. Lovasco, 431 U.S. 783 (1977), and United States v. Marion, 404 U.S. 307 (1971), explained the following two-pronged inquiry when preindictment delay is alleged to violate due process:
 
 
 8
 First, a court must assess whether the defendant has suffered actual prejudice, and the burden of proving such prejudice is clearly on the defendant. If the threshold requirement of actual prejudice is met, the court must then consider the Government's reason for the delay, balancing the prejudice to the defendant with the Government's justification for delay.... The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates "fundamental conceptions of justice" or "the community's sense of fair play and decency."
 
 
 9
 United States v. Automated Medical Laboratories, Inc., 770 F.2d 399, 403-04 (4th Cir.1985).
 
 
 10
 Applying the first prong of this test, Hakaj asserts that the preindictment delay prejudiced his defense in five ways. First, he claims that witnesses lost their memories. Second, he points out that certain evidence introduced at his state trial was lost before he was indicted and was unavailable for the federal trial. Third, he claims that he divorced his wife after his state trial, lost contact with her, was unable to meet with her before she testified in his defense at the federal trial, and therefore could not properly prepare his defense. Fourth, he claims that he was prejudiced because the district court allowed the government to present evidence concerning the violent nature of Bardh's death to the jury, pointing out that this would not have occurred if he was indicted before Bardh's death. And fifth, he claims that he was prejudiced because the government waited until after the state trial to indict him and then, during voir dire, unfairly emphasized to the jury that although Hakaj was acquitted in the state trial new evidence was available for the federal trial. We conclude that none of these claims establishes substantial prejudice.
 
 
 11
 Regarding the first claim, the dimming of memories does not ordinarily establish substantial prejudice. See Marion, 404 U.S. at 326; United States v. Snyder, 668 F.2d 686, 689 (2d Cir.1982). We reject Hakaj's second claim because the lost evidence in question--letters written by Bardh's girlfriend that were used to impeach her testimony at Hakaj's state trial--was not significant. His third claim must also be rejected because, while Hakaj did not actually meet with his former wife before she testified, his attorney spoke with her on the telephone for five hours the night before she testified and had access to her testimony at the state trial as well. This gave him enough information to formulate a proper defense.
 
 
 12
 Regarding the fourth claim, Federal Rule of Evidence 804(b) required the government to establish that Bardh was unavailable as a witness before his previous testimony and extrajudicial statements could be admitted into evidence. The government was meeting this burden of proof when it informed the jury of Bardh's death. The government in no way suggested that Hakaj had anything to do with the murder and, furthermore, the court specifically instructed the jury not to consider any of the facts surrounding Bardh's death when reaching a verdict.
 
 
 13
 Finally, regarding Hakaj's fifth claim of prejudice, Hakaj's counsel specifically requested that the jury be informed that Hakaj was previously acquitted in the state trial after both sides recognized that it would be impossible to keep from the jury the fact that Hakaj was previously tried. The government was merely explaining to the jury why new charges were brought and attempting to find out if knowledge of the previous verdict would unduly effect any members of the jury. Indeed, an examination of the trial transcript reveals that jury members indicated that, if anything, they were predisposed to vote in Hakaj's favor because they knew that a previous jury in a very similar trial had acquitted him. Therefore, we reject this claim as well.
 
 
 14
 In any event, even if one were to assume that Hakaj suffered some slight prejudice from the preindictment delay, application of the second prong of the Automated Medical Laboratories test shows that his due process rights were not violated. The government maintains that the preindictment delay occurred because it was conducting a continuing investigation into organized crime in western Virginia that did not turn to Hakaj until late 1985 or early 1986. In many ways, this case is similar to Automated Medical Laboratories. That is, while it seems that the government could have pursued its case against Hakaj more diligently, there is no evidence--and Hakaj has not alleged--that the government's delay was motivated by bad faith or that it delayed in "reckless disregard of circumstances ... suggesting that the delay would impair the ability to mount an effective defense." Lovasco, 431 U.S. at 795 n. 17. See Automated Medical Laboratories, 770 F.2d at 404. Hakaj has not suffered any more prejudice than any defendant is likely to suffer during the running of the statute of limitations and the government's reason for the preindictment delay outweighs this prejudice. There is no reason to believe that the government, by compelling Hakaj to stand trial in this case, violated the "fundamental conceptions of justice ... which define the community's sense of fair play and decency," Lovasco, 431 U.S. at 790.
 
 III
 
 15
 Hakaj's other assignments of error are also dismissed. First, he claims that the court violated the confrontation clause of the sixth amendment when it admitted Bardh's testimony at the state trial into evidence. The testimony was admitted pursuant to Fed.R.Evid. 804(b)(1), which provides that the former testimony of a witness is admissible "if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by ... cross-examination." Hakaj asserts that he did not have such an opportunity at the state trial because he was unaware at that time of the statements that Bardh made to Bisaki and Berisha in New York. Hakaj claims that he would have impeached Bardh with those statements at the state trial.
 
 
 16
 The admissibility of prior testimony pursuant to Fed.R.Evid. 804(b)(1) does not violate the sixth amendment's confrontation clause if the former testimony is reliable. See Ohio v. Roberts, 448 U.S. 56, 66 (1980); Dutton v. Evans, 400 U.S. 74, 89 (1970); Ellison v. Sachs, 769 F.2d 955, 956 (4th Cir.1985). Bardh's former testimony was reliable even though Hakaj did not impeach him with the inconsistent statements he made to Bisaki and Berisha. Furthermore the cross-examination of Bardh was effective because the jury at the state trial apparently chose not to believe Bardh and acquitted Hakaj. Finally, Hakaj brought out the inconsistencies between Bardh's state trial testimony and his statements to Bisaki and Berisha through other witnesses at the federal trial. Thus, the admission of Bardh's state trial testimony did not violate the sixth amendment.
 
 
 17
 Hakaj next claims that Bardh's extrajudicial statements to Berisha and Bisaki were improperly admitted into evidence as statements by a coconspirator "during the course and in furtherance of the conspiracy" under Fed.R.Evid. 801(d)(2)(E). We reject Hakaj's contention that, even if a conspiracy did exist, it ended after Hakaj and Bardh destroyed the restaurant. In arson cases, "[t]he conspiracy continues until defendants obtain the insurance money or abandon their quest." United States v. Xheka, 704 F.2d 974, 986 (7th Cir.1983). Because the statements were admissible under Rule 801(d)(2)(E), we also reject Hakaj's claim that the admission of these statements violated the confrontation clause. Ohio v. Roberts, 448 U.S. at 66; United States v. Chindawongse, 771 F.2d 840, 846-47 (4th Cir.1985).
 
 
 18
 Bardh's extrajudicial statements were also admissible as statements against interest under Fed.R.Evid. 804(b)(3). Hakaj argues that, because Bardh was under arrest, he may have made some of the statements in order to gain favor with the police and therefore they were not statements against his interest. This argument is groundless because the statements in question were not made to the police but to Berisha and Bisaki and, at least in Berisha's case, were not made in an attempt to exonerate himself but, rather, in an attempt to secure payment from Hakaj.
 
 
 19
 AFFIRMED.