**UNITED STATES of America, Plaintiff,**

v.

**Luis G. NICOT and Marcos A. Vega, Defendants.**

**Crim. No. 90–320 (RLA).**

United States District Court, D. Puerto Rico.

July 8, 1992.

Edwin Vázquez, U.S. Attorney's Office, Crim. Div., Hato Rey, Puerto Rico, for plaintiff.

Juan R. Acevedo Cruz, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

## PROCEDURAL BACKGROUND

Defendants, officials of two labor unions and charged with failure to submit reports required by labor statutes, have filed objections to the U.S. Magistrate Judge's denial of their petition to suppress evidence.

## FACTS

The United States Department of Labor (DOL) received a complaint on February 19, 1988 from a Mr. José Aguilar Ramos, alleging that "Federación General de Trabajadores," a labor union, owed him $20,-000.00 for services related to health insurance for its members. The complaint further stated that an employer had given an advance of $20,000.00 to the Union.

A review of the DOL's records identified potential deficiencies in the Union's filings of its annual reports. On March 7, 1988, an investigation was initiated by DOL agent Angel Luis Guzmán. According to agent Guzmán, the investigation was not labeled "administrative" or "criminal" in nature at the outset because the DOL was unaware of what results it would yield. On March 18, 1988, agent Guzmán first visited the office of the Union but was unable to meet with either defendant. Subsequently, he met with codefendants Vega, Secretary/Treasurer, and Nicot, President of the Union, and informed them that he was investigating "Federación General de Trabajadores" under the authority of the Labor Management Reporting and Disclosure Act, and that he was going to verify the reports that the Union had filed with the DOL during 1985 and 1986. Guzmán also requested to be allowed to use the office facilities and asked to see cancelled checks; bank statements; disbursements' journal; bills; invoices and copies of other documents they had available which could establish that the LM–3 forms (financial annual reports) that the Union had submitted to the DOL were accurate and complete.

Guzmán's inspection yielded the following information:

1) The Union had, in fact, received an advance but it was in the amount of $35,-000.00 from El San Juan Towers, one of the employers that hired union members, and neither the employer nor the Union had filed a report of this transaction as required by law;

2) The Union did not have a constitution as required by law;

3) Many of the financial records were inaccurate.

All the documents obtained by the investigator were Union documents which were voluntarily turned over to the investigating agent. No personal documents were ever

requested. At a subsequent point in the investigation, agent Guzmán found it necessary to question both defendants and to record the interviews. The first recorded interview of codefendant Nicot was held on April 12, 1988. On that same day agent Guzmán met with an Assistant United States Attorney in Puerto Rico to obtain guidance from the U.S. Justice Department, as Guzmán suspected that there might have been something amiss. At the meeting, the Assistant U.S. Attorney indicated to agent Guzmán that he proceed with the investigation. Thereafter, on May 10, 1988, agent Guzmán gave defendants the required *Miranda* warnings,[1] after which defendants continued to cooperate fully with the investigation.

During the investigation of "Federación General de Trabajadores," agent Guzmán discovered that there was another union, "Unión de la Construcción, Concreto Mixto y Equipo Pesado," of which Messrs. Nicot and Vega were also President and Secretary/Treasurer, respectively, and from which these defendants had also assigned themselves salaries. This second investigation further revealed that the Union had not filed an initial report, a constitution nor had it ever filed an annual report.

A report based on all the above information gathered by agent Guzmán was submitted to the Department of Justice[2] in March of 1989.

## ARGUMENT OF THE PARTIES

Defendants argue that agent Guzmán, disguised under his Labor Department investigator's hat, conducted a criminal investigation for the United States Department of Justice without affording the defendants their constitutional protections to which every citizen is entitled. Thus, they ask that the evidence obtained in the course of the investigation be suppressed.

According to the Government, the DOL agent was gathering routine information. The determination of whether the investi-gation would result in a criminal or administrative violation was outside the scope of his duties. The Government further argues that Congress has given the DOL broad powers that permit evidence to be obtained in the manner that agent Guzmán carried out this investigation. In conformity with these powers, they contend, the Court should allow the evidence gathered in the investigation to be presented at trial.

## DISCUSSION OF THE LAW

The investigation in question was conducted pursuant to Section 601 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 521, which states as follows:

(a) The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter (except subchapter II of this chapter) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this chapter and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.

In the case at hand, the Secretary of Labor through his representatives, received a call from an interested person and determined that it was necessary to make an investigation to ascertain whether any person had violated or was about to violate a labor statute. As a result, DOL officials entered the premises of the "Federación General de Trabajadores" and "Unión de Construcción, Concreto Mixto y Equipo Pesado," inspected their records and accounts, and questioned defendants Vega

---

1. *Miranda v. Arizona,* 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).

2. It should be noted that the only subpoena issued in this case, after it had already been referred to the Justice Department for its prosecution, was to Banco Popular de Puerto Rico.

and Nicot and others they deemed necessary. Subsequently, the DOL, through agent Guzmán, cooperated with the Justice Department as permitted by Section 607 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 527, which section states as follows:

> In order to avoid unnecessary expense and duplication of functions among Government agencies, the Secretary may make such arrangements or agreements for cooperation or mutual assistance in the performance of his functions under this chapter and the functions of any such agency as he may find to be practicable and consistent with law ... The Attorney General or his representative shall receive from the Secretary for appropriate action such evidence developed in the performance of his functions under this chapter as may be found to warrant consideration for criminal prosecution under the provisions of this chapter or other federal law.

The investigation in question cannot be rendered illegal by the mere fact that the DOL disclosed potentially incriminating evidence to the Justice Department. *Seafarers International Union v. Wirtz*, 394 F.2d 777 (D.C.Cir., 1968). Accordingly, if the form and manner of the investigation is not unlawful, the evidence gathered therefrom is not to be considered "fruit from the poisonous tree" and is therefore admissible.

Defendants argue that "irrespective of the broad empowerment by Congress to the Secretary of Labor, it is hornbook Constitutional law that 'no act of Congress can authorize a violation of the Constitution'." (quoting *Almeida–Sánchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973)). They further argue that "[o]ne of the recognized limitations to such broad administrative investigatory powers is that they may not be used with the purpose to gather (sic) evidence for a criminal prosecution since such use of the administrative scheme violates the Fourth Amendment." *Id.*, citing *United States v. Lawson*, 502 F.Supp. 158, 167 (D.Md.1980).

Defendants seem to be arguing for the proposition that since the evidence gathered tends to incriminate them, it should have been obtained pursuant to a validly executed search warrant or subpoena and after advising the defendants of the nature of the investigation and affording them the constitutional protections set forth in *Miranda*.

Defendants appear to overlook the fact that the Fourth and Fifth amendments are personal privileges, applying only to natural individuals. When they are acting as representatives of a collective group they cannot invoke personal privileges. *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Furthermore, "[t]he records examined ... were union business records, required to be kept by law, 29 U.S.C. § 436, and subject to inspection by the Department of Labor. [Defendant] had no reasonable expectation of privacy in these records, ... and therefore, could not show that the inspection violated his personal fourth amendment rights." *United States v. Snyder*, 668 F.2d. 686, 690 (2nd. Cir.1982). It is uncontested that from the first day that agent Guzmán went to the Union premises, he informed defendants that he was conducting an investigation pursuant to the Labor Management Reporting and Disclosure Act, which specifically provides that information gathered could be shared with the Attorney General for possible criminal prosecution. 29 U.S.C. § 527.

We also find that there was no need to obtain warrants and/or subpoenas to have access to the Union records. First, the law mandates the unions to make available for inspection for a period of at least five years, documents and records such as those sought in this case. 29 U.S.C. § 436. Second, the defendants themselves freely and voluntarily allowed the agent into the Union premises and voluntarily provided all information requested. Finally, defendants continued providing information and cooperating with the agent, voluntarily, even after the agent gratuitously read them

their rights in May of 1988. Thus, defendants waived any self-incrimination privileges.

In light of the above, we conclude that the evidence can be admitted as recommended by the Magistrate Judge. Accordingly, defendants' objections (docket no. 62, filed January 30, 1992) are hereby DENIED and the Report and Recommendation by the Magistrate Judge (docket no. 56, filed November 27, 1991) is hereby AFFIRMED.

Parties to be notified by telephone and facsimile.

IT IS SO ORDERED.