**UNITED STATES of America,
Appellee,**

v.

**Gerald J. PETRILLO, Defendant–
Appellant.**

**Docket No. 99–1692.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 2000.

Decided Dec. 29, 2000.

120

J. Gilmore Childers, New York, N.Y. (Orrick, Herrington & Sutcliffe, LLP, Geoffrey W. Millsom, Marc P. Berger, Toni M. Mele, of Counsel), for Defendant–Appellant.

Mary Jo White, New York, NY, United States Attorney, Southern District of New York (William F. Johnson, Christine H. Chung, Assistant United States Attorneys, of Counsel), for Appellee.

Before: FEINBERG, MINER and SACK, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Gerald J. Petrillo appeals from a judgement of conviction entered in November 1999 in the United States District Court for the Southern District of New York (Jed S. Rakoff, J.). Following a jury trial, Petrillo was convicted on one count of conspiring to defraud the Internal Revenue Service (IRS) and file false tax returns in violation of 18 U.S.C. § 371, three counts of evading taxes in violation of 26 U.S.C. § 7201 and five counts of committing mail fraud in violation of 18 U.S.C. §§ 1341 and 2. The district court sentenced Petrillo to a term of 27 months imprisonment followed by two years of supervised release, ordered him to pay restitution of $81,231.41 and imposed special assessments of $450.

## I. Background.

From April 1992 to August 1994, Petrillo worked as a securities trader for A.F. Braun (Braun), a private investment firm. To carry out his trades, Petrillo would contact a broker who, in turn, would execute the order and charge Braun a commission. Ostensibly to reduce the burden of such commissions, Petrillo entered into so-called "soft dollar" arrangements with various brokerage firms whereby Braun received rebates on trading commissions. The term "soft dollars" refers to a securities industry practice developed by brokerage firms to attract and retain customers. In a typical soft dollar relationship, a brokerage firm will allocate a percentage of the commissions paid by a client to a soft dollar account in that client's name. Credits in the soft dollar account can then be used to pay third-party vendors for various services that benefit the client, such as investment research, news service reports and electronic market information.

Although Braun's soft dollar accounts were apparently intended to cover expenses incurred by Braun to such third-party vendors, on numerous occasions Petrillo submitted personal expenses to be paid out of these funds. Braun apparently sanctioned this use of soft dollars to cover personal expenses.

While at Braun, Petrillo conducted his trading and soft dollar payment activities through Ed Cohn, a broker who worked at Purcell Graham and later at Oakford, two of the brokerage firms hired by Braun to clear trades. At Oakford, Cohn convinced William S. Killeen and Thomas Bock, co-defendants in the present action, to conceal soft dollar payments from the IRS. As a result, even though Oakford issued checks from soft dollar funds to cover Petrillo's personal expenses, Oakford did not file 1099 forms.

Petrillo left Braun in August 1994 and joined Chelsey Capital as a trader. He continued his relationship with Cohn and used soft dollar proceeds to pay personal expenses. However, Petrillo's supervisor at Chelsey Capital, Stuart Feldman, was unaware, according to his testimony at trial, that Petrillo had arrangements with brokerage firms to pay his personal expenses out of soft dollar accounts. Petrillo's use of soft dollar funds during his tenure at Chelsey Capital is the basis of his mail fraud convictions.

Petrillo did not report the soft dollar payments, which totaled $200,000 during his employment at Braun and Chelsey Capital, as income on his tax returns for 1992–1994. To make matters worse, he also claimed the personal expenses as business deductions even though those expenses had been paid on his behalf out of soft dollar funds.

In the spring of 1994, Petrillo learned that the government had initiated an investigation of soft dollar practices at the brokerage firms with which he had dealt. Shortly thereafter, Petrillo decided to amend his tax returns for 1992 and 1993 to reflect the soft dollar payments. He later did the same with his 1994 tax return.

At trial, Petrillo was convicted of conspiring with Ed Cohn and others to defraud the IRS, defrauding the IRS by filing false. tax returns and committing

mail fraud as a result of his unauthorized use of soft dollar funds at Chelsey Capital. To support the conspiracy charge, the government offered the negotiated plea allocutions of co-defendants William Killeen and Thomas W. Bock. Petrillo objected to admission of this evidence, but the district court admitted it nonetheless and elaborated on its ruling in a thoughtful opinion filed after the trial was completed. *United States v. Petrillo*, 60 F.Supp.2d 217 (S.D.N.Y.1999). After the jury verdict but before sentencing, Petrillo moved for a new trial based on newly discovered evidence. The district court denied the motion. At the sentencing hearing the following month, the district court denied Petrillo's request to group Petrillo's tax and mail fraud convictions pursuant to U.S.S.G. § 3D1.2.

On appeal to this court, Petrillo challenges the admission of the plea allocutions, the denial of his motion for a new trial and the district court's refusal to group his mail and tax fraud convictions.

II.    Admission of plea allocutions.

Petrillo first objects to the admission at trial of the guilty plea allocutions of co-defendants and alleged co-conspirators Killeen and Bock. Petrillo argues that the allocutions, admitted as statements against penal interest pursuant to Federal Rule of Evidence 804(b)(3), violated his rights under the Confrontation Clause of the Sixth Amendment. In particular, Petrillo contends that the allocutions fail to satisfy the Confrontation Clause safeguards established by the Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).

In *Ohio v. Roberts*, the Court held that hearsay evidence could be admitted at trial without running afoul of the defendant's right to confront his accuser when (1) the declarant is unavailable and (2) the statement is either admitted pursuant to "a firmly-rooted hearsay exception" or has

"particularized guarantees of trustworthiness." *Ohio*, 448 U.S. at 66, 100 S.Ct. 2531. We have noted that this court has never decided whether a statement against penal interest under Fed.R.Evid. 804(b)(3) qualifies as a firmly-rooted hearsay exception, *Latine v. Mann*, 25 F.3d 1162, 1166 (2d Cir.1994), as the district court here correctly pointed out. *United States v. Petrillo*, 60 F.Supp.2d at 218. However, a plurality of the Supreme Court in *Lilly* held that, under circumstances somewhat similar to those of the present case, "accomplices' confessions that inculpate a criminal defendant are not within a firmly-rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." 527 U.S. at 134, 119 S.Ct. 1887. We note that *Lilly* does not decide the issue before us in the present case—the admissibility of plea allocutions where the accomplices' statements were redacted so that they did *not* inculpate the defendant. In any event, after consideration of all the relevant facts and circumstances, we agree with the district court that the allocutions were accompanied by such "particularized guarantees of trustworthiness" that cross-examination would have added little to an evaluation of their reliability. *United States v. Matthews*, 20 F.3d 538, 545 (2d Cir.1994).

Petrillo argues that the guilty plea allocutions were inherently untrustworthy. He points to the unequal bargaining power of the government and the co-defendants during plea negotiations. Furthermore, Petrillo suggests that Killeen and Bock had a substantial incentive to provide the Government with allocutions containing inculpatory information given the fact that they simultaneously negotiated pleas to charges in the present indictment together with pleas to charges for securities fraud under a separate indictment.

■    While the potential for coercion or misrepresentation during the negotiation over guilty plea allocutions may be present in theory, we conclude on this record that the district court did not abuse its discre-

tion in admitting the evidence. In *United States v. Moskowitz*, we held that an allocution admitted pursuant to Fed.R.Evid. 804(b)(3) has the requisite particularized guarantees of trustworthiness where, among other elements, "(1) the plea allocution undeniably subjected the defendant to the risk of a lengthy term of imprisonment ... (2) the allocution was given under oath; and (3) the district court instructed the jurors ... [to] consider [the] ... allocution only as evidence that a conspiracy existed." 215 F.3d 265, 269 (2d Cir.2000) (per curiam) (citations and quotations omitted); see also *United States v. Gallego*, 191 F.3d 156, 167–68 (2d Cir.1999).[1] The district court here found that the statements "were made in open court, under oath, before the sentencing judge, following extensive pre-trial proceedings, with the assistance of counsel, and against the declarants' penal interests." *United States v. Petrillo*, 60 F.Supp.2d at 220. In addition, the court noted that "the jury was repeatedly instructed on the limited permissible use of this evidence." *Id* at 219 n. 2. On this record, the allocutions of Killeen and Bock satisfy the standards established in *Moskowitz*.

### III. Motion for a new trial.

Petrillo next contends that the district court abused its discretion when, without conducting a hearing, it denied his motion for a new trial under Fed.R.Crim.P. 33. The motion was based on newly discovered evidence allegedly showing that Stuart Feldman, Petrillo's supervisor and a witness for the prosecution, had knowingly provided false and misleading testimony regarding his lack of knowledge of soft dollar practices at Chelsey Capital.

During trial, the government questioned Feldman about his conversations with Petrillo regarding the use of soft dollars at Chelsey Capital. In his testimony, Feldman stated that he informed Petrillo that a

soft dollar arrangement "did not make economic sense" for the company. In addition, Feldman testified that he was not aware that Petrillo had used soft dollars to pay personal expenses.

Petrillo argues that such testimony stands in marked conflict with evidence discovered in the course of a post-trial investigation into perjury allegations against Feldman. In that investigation, the government discovered numerous instances of soft dollar payments from brokerage firms to either Feldman or his company. The government also conducted a post-trial interview with Maria Kleinberg, an employee at Chelsey Capital, who revealed that Feldman had instructed her to expect soft dollar payments a few months after Petrillo joined the company. According to Petrillo, these discoveries constitute compelling evidence of Feldman's knowledge and involvement in soft dollar arrangements. Consequently, Petrillo contends that he was entitled to a hearing to determine whether the information discovered casts doubt on the veracity of Feldman's testimony.

"A motion for a new trial based on newly discovered evidence is not favored and a district court must exercise great caution ... and may grant the motion only *in the most extraordinary circumstances*." *United States v. Diaz*, 176 F.3d 52, 106 (2d Cir.1999) (emphasis in original) (quotations and citations omitted). "Such relief should be granted only if the evidence is material to the verdict, could not with due diligence have been discovered before or during trial and is not cumulative." *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir.1995). To satisfy the materiality element where the government was unaware of the alleged perjury at trial—and no claim is made here to the contrary—a defendant must demonstrate that "but for the perjured testimony, [he] would most likely not have been convict-

1. Strictly speaking, the third element is unrelated to the trustworthiness of the statement. However, a limiting instruction to the jury

serves to further protect a defendant's rights under the Confrontation Clause.

ed." *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir.1991). In this situation, we review for abuse of discretion the district court's decision to deny Petrillo's motion for a new trial without a hearing. *Sasso*, 59 F.3d at 350.

■ Based on these standards, we agree with the district judge that the newly discovered evidence did not merit a new trial. First, as the judge observed at oral argument, the evidence of soft dollar payments was more cumulative than new. Based on pre-trial discovery, Petrillo was already aware that Chelsey Capital had received soft dollar payments. In fact, during cross-examination, defense counsel questioned Feldman about a $5,000 soft dollar payment Chelsey Capital had received from Purcell Graham, a brokerage firm. Moreover, based on Petrillo's knowledge of soft dollar practices at Chelsey Capital, evidence of the additional payments could likely have been discovered prior to trial through the exercise of due diligence.

Even if the evidence were not cumulative, it is far from clear that it would have conclusively demonstrated that Feldman perjured himself during testimony. At oral argument before the district court, Petrillo's counsel appeared to acknowledge that, in light of the new evidence, Feldman's testimony was misleading rather than demonstrably false. We agree with the district court that the ambiguity of Feldman's testimony was not so extreme as to be materially misleading. Equivocations by a witness during direct examination that may lead the jury to draw incorrect inferences can be clarified on cross-examination. Defense counsel apparently made the strategic choice to pursue the issue of Feldman's knowledge no further.

Finally, the new evidence was unlikely to have altered the jury's verdict on the mail fraud charges (the only convictions challenged by Petrillo's motion). While that evidence may have shown that Feldman was aware of soft dollar payments, it was not sufficient to show that he had

given Petrillo permission to use soft dollars to pay for personal expenses. Feldman's approval of Petrillo's use of the funds for personal expenses, not Feldman's awareness of soft dollar accounts, was the central issue in the mail fraud charges.

IV. Grouping of tax evasion and mail fraud counts under Sentencing Guideline § 3D1.2(d).

At sentencing, the district court refused to group Petrillo's various mail fraud and tax evasion counts for purposes of calculating his overall offense level. Had these counts been grouped, the resulting offense level would have been 16 instead of 18, corresponding to a 21–27 month sentencing range reduced from the 27–33 month range actually applied. Petrillo argues that because tax evasion and mail fraud are substantially similar charges whose offense levels are determined by the total amount of harm or loss, the counts should have been grouped. Notably, the government has changed its position on this issue since trial and now consents to re-sentencing in response to our decision in *United States v. Napoli*, 179 F.3d 1 (2d Cir.1999).

Under U.S.S.G. § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Subsection (d) includes among the counts involving substantially the same harm counts where "the offense level is determined largely on the basis of the total amount of harm or loss." In the Commentary, Application Note 6 adds that counts should be grouped "under subsection (d) if the offenses are of the same general type and otherwise meet the criteria of grouping."

We apparently have not ruled before today on the grouping of tax evasion and mail fraud counts. However, we have previously considered the application of U.S.S.G. § 3D1.2(d) to counts of money laundering and fraud arising from the same funds. See *Napoli*, 179 F.3d 1. In

that case we held that the money laundering and fraud offenses should not be grouped, reasoning that the offense level for money laundering is not "based primarily on the amount of money involved." 179 F.3d at 10. Thus, application of subsection (d) to money laundering is prima facie inappropriate.

 By contrast, both tax evasion and mail fraud follow offense level schedules that trigger substantially identical offense level increments based on the amount of loss. Moreover, the offenses here were both frauds, were part of a single continuous course of criminal activity and involved the same funds. It is true that the tax and fraud offenses involved different victims, an argument against grouping. However, this alone is not dispositive. Application Note 6 strongly suggests that "the mere fact that [defendant's] ... counts harmed different victims is ... insufficient to establish that these counts cannot be grouped under subsection (d)." *Napoli*, 179 F.3d at 9. Based on this reading of the Guidelines and *Napoli*, we agree with the parties that the mail fraud and tax evasion counts here should be grouped and Petrillo's sentence adjusted accordingly.

## V. Conclusion.

For the reasons stated above, we affirm Petrillo's convictions on all counts. We vacate the sentence and remand to the district court for re-sentencing in accordance with this opinion.[2]

---

**2.** We note that the district court has indicated that it intends to impose a sentence of 21 months if the various counts are grouped. However, in the interests of sound judicial administration we remand to the district court for its determination.