**UNITED STATES of America,**
**Appellee,**

v.

**Mohammad DOLAH, Marshall**
**Weinberg, Defendants–**
**Appellants.**

**Docket Nos. 00–1173(L), 00–1200(CON).**

United States Court of Appeals,
Second Circuit.

Argued Oct. 17, 2000.

Decided March 26, 2001.

Steven D. Gordon, New York, N.Y. (Jerry D. Bernstein, Holland & Knight, LLP, New York, N.Y., on the brief), for defendants-appellants.

Kim A. Berger, Asst. U.S. Atty., New York, N.Y. (Mary Jo White, U.S. Atty., David Raymond Lewis, James J. Benjamin, Jr., Asst. U.S. Attys., New York, N.Y., on the brief), for appellee.

Before: MESKILL, NEWMAN, and CABRANES, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal primarily concerns a claim that the admission of out-of-court witness statements, coupled with the prosecution's selective use of immunity, resulted in the denial of a fair trial. The Government granted immunity to some former co-workers of the Appellants and presented them as live witnesses; as to other former co-workers, the Government refused to grant use immunity and instead offered their guilty plea allocutions as statements against penal interest. As a result, the Appellants could cross-examine only the co-workers deemed so entirely helpful to the prosecution that immunity was provided them, but could not cross-examine the other co-workers, portions of whose statements, helpful to the prosecution, were placed into evidence.

Mohammad Dolah and Marshall Weinberg appeal from the March 9 and 10, 2000, judgments of the United States District Court for the Southern District of New York (Robert L. Carter, District Judge), convicting them, after a jury trial, of nine counts of securities fraud (15 U.S.C. §§ 77q and 77x), and one count of conspiracy (18 U.S.C. § 371). Although the introduction into evidence of the plea allocutions of the non-immunized co-workers, following the Government's selective use of immunity for some of the co-workers, arguably presents a substantial claim of error, we conclude that, if error occurred, it was harmless. We also reject the Appellants' challenge to the return of partial verdicts. We therefore affirm.

### Facts

The evidence permitted the jury to find the following facts. Dolah and Weinberg worked at Stone Asset, a brokerage firm. Dolah supervised "cold-calling" stock brokers; Weinberg was the president and a principal of the firm. The charged offenses concerned Stone Asset's private stock offering on behalf of two very small firms (one of which tried to make money by placing advertisements on the back of bicycle messengers' bicycles). Stone Asset told customers that underwriting fees and brokerage expenses would consume only 10 percent of the capital raised; in fact Stone Asset got most of the proceeds. Dolah and/or Weinberg personally altered financial statements, shredded documents, directed cold callers to use fictitious names, took delivery of cash payments

from the issuers, and tried to remove their own names from all Stone Asset documents.

Dolah and Weinberg's primary defense was that they lacked knowledge of the deceit practiced at Stone Asset; they also argued that they believed the companies were good investments.

At trial, the Government's witnesses included three former employees of Stone Asset who had been given immunity,[1] and two former employees who had pled guilty pursuant to cooperation agreements. The Government also introduced the guilty plea allocutions of three other former employees who had been indicted with Dolah and Weinberg, had pled guilty prior to trial, and were awaiting sentencing. These co-defendants had indicated an intention to plead their privilege against self-incrimination if called to testify, but they were not given immunity.

The plea allocutions of the three non-immunized co-defendants were admitted into evidence, under a limiting instruction, to prove the existence of the conspiracy and the role of these non-testifying co-defendants. The names of the Appellants were redacted from the plea allocutions.

The Appellants were found guilty by the jury on all counts. The details concerning the return of partial verdicts are set forth in Part III, *infra.* Their sentences included terms of imprisonment of forty-six months.

## Discussion

### I. The Admission of the Plea Allocutions

Judge Carter admitted into evidence the guilty plea allocutions of the three co-defendants under the provision of the Feder-

al Rules of Evidence that exempts from the prohibition of hearsay a "statement against interest" (*i.e.*, a statement contrary to the interests of the declarant, such as an admission of criminal liability). Fed. R.Evid. 804(b)(3). Such statements are admissible only if the declarant is "unavailable as a witness," *id.* 804(b), and " '[u]navailability as a witness' includes situations in which the declarant . . . is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement," *id.* 804(a)(1). Here, the three co-defendants had indicated they would invoke their self-incrimination privilege. Rule 804 also provides that "[a] declarant is not unavailable as a witness if . . . refusal . . . is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying." *Id.* 804(a).

The Appellants challenge the admission of the co-defendants' plea allocutions as contrary to both Rule 804 and the Constitution.

### A. Rule 804

The argument based on Rule 804 has two parts. At its fullest, the argument is that the Government has not satisfied the "unavailability" requirement of Rule 804(b) because the co-defendants would have testified had the Government displaced their self-incrimination privilege by giving them use immunity. *See* 18 U.S.C. § 6002 (use immunity). More narrowly, the Appellants contend that even if the co-defendants would normally be considered "unavailable" within the meaning of Rule 804(b), their unavailability was attributable to "wrongdoing" by the Government within the meaning of Rule 804(a) because the

---

**1.** Complaints had been filed against two of these former employees, but the complaints were dismissed.

102

Government withheld immunity from the three former Stone Asset employees whose plea allocutions they wanted to introduce after selectively conferring immunity on other former employees.

■ *Unavailability.* It is settled in this Circuit that a witness who invokes the privilege against self-incrimination is "unavailable" within the meaning of Rule 804(b) even though the Government has the power to displace the witness's privilege with a grant of use immunity. We made that clear many years ago in *United States v. Lang,* 589 F.2d 92, 95–96 (2d Cir.1978), and recently adhered to that position in *United States v. Gallego,* 191 F.3d 156, 166–68 (2d Cir.1999) (upholding admissibility of plea allocution of co-defendant); *see also United States v. Petrillo,* 237 F.3d 119 (2d Cir.2000) (same); *United States v. Moskowitz,* 215 F.3d 265, 268–69 (2d Cir.2000) (same).[2] "[T]he law appears to be well settled that the power of the Executive Branch to grant immunity to a witness is discretionary...." *Lang,* 589 F.2d at 95–96; *see also Earl v. United States,* 361 F.2d 531, 534 (D.C.Cir.1966).

Between *Lang* and *Gallego* some doubt had arisen in our Circuit whether a witness invoking the privilege against self-incrimination remained unavailable *to the Government* in view of the Government's power to displace the privilege by granting immunity. In *United States v. Salerno,*

937 F.2d 797, *amended by* 952 F.2d 623 (2d Cir.1991), *rev'd,* 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992), we ruled that the "similar motive" requirement of Rule 804(b)(1)[3] did not apply to grand jury testimony offered by defendants against the Government, *see* 937 F.2d at 805–08, a ruling rejected by the Supreme Court, *see* 505 U.S. at 321–24, 112 S.Ct. 2503. We also ruled that the grand jury witnesses, who invoked their self-incrimination privilege at trial, were unavailable to the defendants, *see* 937 F.2d at 805, 952 F.2d at 623, a ruling not questioned by the Supreme Court. In making the latter ruling, we added in dictum that the grand jury witnesses were available to the Government, *see id.,* reasoning that the Government could displace their self-incrimination privilege, *see* 937 F.2d at 805. That reasoning was questioned, *see United States v. Salerno,* 952 F.2d 624, 624–26 (Newman, J., with whom Kearse, Mahoney, and Walker, JJ., join, dissenting from denial of rehearing in banc), and subsequently disavowed by the author of the *Salerno* panel opinion as an unwarranted reading of that opinion, *see United States v. Bahadar,* 954 F.2d 821, 827 (2d Cir.1992) (The argument that "the government would be unable to invoke any of the rule 804(b) hearsay exceptions in criminal cases, since the government always has the ability to immunize a witness who claims the fifth amendment privilege and thereby make that witness

---

**2.** In *Gallego* and *Petrillo,* the co-defendants whose plea allocutions were admitted in evidence were unavailable because they had stated their intention to invoke the privilege against self-incrimination if called as trial witnesses. *See United States v. Gallego,* 913 F.Supp. 209, 212 (S.D.N.Y.1996); *United States v. Petrillo,* 60 F.Supp.2d 217, 219 (S.D.N.Y.1999). In *Moskowitz,* the reason for the unavailability of the co-defendant whose plea allocution was placed in evidence is not disclosed in the Second Circuit's opinion, but as with the defendants in *Gallego* and *Petrillo,*

the reason was presumably the risk of self-incrimination at the impending sentencing. *See Mitchell v. United States,* 526 U.S. 314, 119 S.Ct. 1307, 1311–13, 143 L.Ed.2d 424 (1999) (guilty plea does not waive right to remain silent at sentencing).

**3.** The hearsay exception for former testimony requires that "the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed.R.Evid. 804(b)(1).

available ... would be an unrealistic reading of the rules of evidence, of the law of immunity, and of the *Salerno* decision itself.").[4]

The Appellants contend that *United States v. Peterson,* 100 F.3d 7 (2d Cir. 1996), supports a contrary rule. In *Peterson,* a defendant, who relied on his self-incrimination privilege by refusing to testify at his federal trial, sought to introduce his own prior state grand jury testimony, claiming he was "unavailable." We rejected the attempt, ruling that the defendant was not "unavailable" to testify at trial because he retained the decision whether to testify. *Id.* at 13–14 (alternate holding) ("[H]e has made himself unavailable to any other party, but he is not unavailable to himself."). The Appellants argue that just as the defendant in *Peterson* could not offer hearsay where he retained control of his own availability to present his trial testimony, the Government should not be able to offer hearsay plea allocutions where it retains the ability to render the declarants available and present their testimony.

■ The analogy is not persuasive. A defendant's decision whether to testify concerns his assessment of the benefits and risks for the outcome of only his own trial. The Government's decision whether to grant immunity concerns the outcome not only of the trial at which the immunized witnesses would testify, but, if those witnesses are prosecuted, their subsequent trial, at which the Government would have to meet the heavy burden of establishing sources of its evidence, independent of the immunized testimony. *See United States*

*v. North,* 920 F.2d 940, 941–43 (D.C.Cir. 1990). Finally, the Appellants' implicit premise that evidentiary rules for the prosecution and the defense must be mirror images is not always valid. The prosecution faces many evidentiary obstacles not imposed on the defense, notably an obligation to present evidence that is persuasive beyond a reasonable doubt. We conclude that a non-testifying defendant like Peterson remains available to himself for purposes of Rule 804(a), but that, as a general matter, non-testifying witnesses who invoke the privilege against self-incrimination remain unavailable to the Government, despite its authority to confer immunity on them.

■ *Wrongdoing.* The Appellants further contend that the three former employees who were not immunized should not be regarded as unavailable to the Government because their refusal to testify is attributed to "wrongdoing" by the Government within the meaning of Rule 804(a). In the Appellants' view, the Government's action in withholding immunity from the three former employees after selectively immunizing other former employees friendly to the prosecution is "wrongdoing" that undermines the unavailability of the non-immunized former employees and renders their allocutions inadmissible. We disagree.

The quoted language of the Rule applies to circumstances where the Government takes positive action to preclude the witness from testifying. The former employees who did not testify made their own decisions to invoke the privilege against

---

4. *Bahadar* explained that the discussion of unavailability in *Salerno* had only "provided a background for our analysis of rule 804(b)(1), the former testimony exception, which was there in issue." 954 F.2d at 827. With the Supreme Court's rejection of the *Salerno* panel's interpretation of the former testimony ex-

ception to the hearsay rule, the *Bahadar* panel concluded, "When a fifth amendment privilege is properly asserted by a trial witness, that witness becomes 'unavailable' for purposes of rendering potentially applicable all of the hearsay exceptions described in rule 804(b)." *Id.* at 828.

self-incrimination. There is no suggestion that the Government urged them to do so. Although the Appellants suggest that a prosecutor has some opportunity to manipulate co-defendants' sentencing dates to make sure that the risk of self-incrimination at sentencing remains at the time of another defendant's trial, there is nothing in the record to indicate such tactics in this case. The Government's decision not to confer immunity on the three co-defendants was not "wrongdoing" or an act of "procurement" of unavailability within the meaning of Rule 804(a). These co-defendants were unavailable for purposes of the rule.

### B. Constitutional Objections

The Appellants contend that the use of the three co-defendants' plea allocutions violates both the Confrontation Clause of the Sixth Amendment and the procedural due process component of the Fifth Amendment.

■ *Confrontation Clause.* The Appellants contend that the Supreme Court in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999), has interpreted the Confrontation Clause to forbid the Government's use of one defendant's plea allocution at another defendant's criminal trial, even though such an admission might be within the scope of Rule 804.

In *Lilly*, the Court considered whether a tape of the defendant's accomplice confessing to authorities could be played to the jury. The prosecution claimed that the tape was admissible as a statement against penal interest, but the Court disagreed. The Court held that the confession did not meet either of the two tests laid down in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980): (1) the rule admitting statements against penal interest was not a "firmly rooted" hearsay exception, and (2) the taped confession did not have "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. 2531. In *Lilly*, the plurality opinion of Justice Stevens for four members of the Court concluded that "presumptive unreliability ... attach[ed] to accomplices' confessions that shift or spread blame." 119 S.Ct. at 1900. That opinion then noted that such unreliability could be rebutted, yet also said that it was "highly unlikely" that a rebuttal would be successful

> when the statements are given under conditions that implicate the core concerns of the old ex parte affidavit practice—that is, *when the government is involved* in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing.

*Id.* (emphasis added).

Relying on the reference to government involvement, the Appellants argue that *Lilly* should be understood to mean that hearsay cannot be admitted against a defendant whenever the Government has played a role in the production of the statement. Here the Government has played such a role, the argument continues, because its decision not to confer immunity on the co-defendants maintained their unavailability, rendering their allocutions admissible.

Our Circuit has not read *Lilly* so broadly. On the contrary, we have viewed the plurality opinion as rejecting an accomplice's confession because it was "largely 'non-self inculpatory' (*i.e.*, the declarant minimized his own criminal responsibility and shifted blame to the defendant)." *Gallego*, 191 F.3d at 167 n. 5. Moreover, the Appellants' "government involvement" argument, at its fullest, would render inadmissible virtually all hearsay statements against interest on the theory that the

Government played a role in the declarant's unavailability by declining to confer use immunity. Yet, after *Lilly,* we have regularly approved the admission of such statements. *See Petrillo,* 237 F.3d at 122 (plea allocution); *Moskowitz,* 215 F.3d at 268–69 (same); *Gallego,* 191 F.3d at 166–68 (same). The allocutions admitted against the Appellants are as reliable as those accepted in *Petrillo, Moskowitz,* and *Gallego.*

*Procedural Due Process.* Even if the co-defendants' plea allocutions would normally be admissible under Rule 804 as declarations against penal interest made by an unavailable witness, the Appellants further contend that, in the circumstances of this case, the selective immunization of only some of the former employees, combined with the evidentiary use of the plea allocutions of the non-immunized former employees, was so fundamentally unfair as to deny them procedural due process. This argument merits careful consideration, especially in light of the approach our Court has already outlined with respect to defense witness immunity in some limited circumstances.

Although as a general rule the Government may not be required to confer immunity for the benefit of the defense, *see United States v. Turkish,* 623 F.2d 769, 777 (2d Cir.1980), we have recognized that in narrowly defined circumstances the Government will face a choice between either not immunizing witnesses who invoke the self-incrimination privilege and whom the prosecution might wish to call, or else immunizing both its own recalcitrant witnesses and those the defense might wish to call.[5] That choice confronts the Government where the following special circumstances are present:

> (1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and [3] is not obtainable from any other source.

*United States v. Burns,* 684 F.2d 1066, 1077 (2d Cir.1982); *see also United States v. Diaz,* 176 F.3d 52, 115 (2d Cir.1999) ("The defendant bears the burden of showing that each of these elements is present.").

In several subsequent decisions, we have characterized our Circuit's approach to imposing upon the Government a choice that includes defense witness immunity as "a three-part test" (discriminatory use by the Government to gain tactical advantage, probative and exculpatory value of the expected evidence, and unobtainability from other sources). *See Diaz,* 176 F.3d at 115; *United States v. Ballistrea,* 101 F.3d 827, 837 (2d Cir.1996) ("three-prong test"); *United States v. Bryser,* 95 F.3d 182, 187 n.2 (2d Cir.1996); *Bahadar,* 954 F.2d at 826; *United States v. Pinto,* 850 F.2d 927, 935 (2d Cir.1988); *United States v. Calvente,* 722 F.2d 1019, 1025 (2d Cir.1983). The "discriminatory use" component of the test is not entirely clear. It is arguable that this component does not mean a selection of a candidate for immunity based on some objectionable characteristic, but means simply a decision by the Govern-

---

**5.** We have emphasized that the Government faces a choice concerning defense witness immunity, not an obligation to confer it. "This circuit has followed the carrot-and-stick approach, leaving the immunity decision to the executive branch but interposing the judicial power to subject the government to certain choices of action." *Bahadar,* 954 F.2d at 826; *see also Salerno,* 937 F.2d at 807 ("[T]he government is in no way *required* to grant use immunity to a witness called by the defense; it is simply left with a series of choices." (emphasis in original)).

ment to confer immunity on some witnesses and not on others. This view draws support from the citation in *Burns* to our prior decision in *United States v. Praetorius,* 622 F.2d 1054 (2d Cir.1979), where we noted decisions of other circuits that we characterized as requiring the Government to confer defense witness immunity "where the government has used immunity to compel testimony from its own witnesses." *Id.* at 1064 (citing *United States v. Alessio,* 528 F.2d 1079 (9th Cir. 1976), and *Earl,* 361 F.2d at 534).[6] On the other hand, *Burns* referred to a "discriminatory use of immunity to gain a tactical advantage," 684 F.2d at 1077, and "tactical advantage" might mean something more than merely selecting from among potential witnesses those who will receive immunity. *See Ballistrea,* 101 F.3d at 837 ("Nothing in the record indicates that the Government had granted immunity to its witnesses, and refused to grant immunity to defendant's witnesses, in order to gain a tactical advantage."); *Burns,* 684 F.2d at 1077 ("[W]e find unpersuasive appellant's claims that the government engaged in either *overreaching* or *manipulative use*

of immunity to gain a tactical advantage." (emphasis added)).

■ Our Circuit's approach to defense witness immunity—confronting the Government with a choice of not immunizing its witnesses, or else, in limited circumstances, conferring use immunity on a defense witness—recognizes the essential unfairness of permitting the Government to manipulate its immunity power to elicit testimony from prosecution witnesses who invoke their right not to testify, while declining to use that power to elicit from recalcitrant defense witnesses testimony that meets our three-part test (however its components are understood). Although we have recognized that "[t]he fifth amendment due process clause does not mandate 'that defense witness immunity must be ordered whenever it seems fair to grant it,' " *Pinto,* 850 F.2d at 935 (quoting *Turkish,* 623 F.2d at 777), we have consistently assumed that, in some limited circumstances, using the immunity device in a one-sided manner can result in a basic unfairness that rises to the level of a violation of procedural due process.

**6.** *Alessio* indicated that a defendant could be denied due process if the Government immunized its own witnesses but not a defense witness who invoked the self-incrimination privilege, *see* 528 F.2d at 1081, but found no denial of a fair trial because the testimony of the defense witness for whom immunity was sought was cumulative, *see id.* at 1082. *Earl* acknowledged only that a defendant would have a strong argument that the Government could not both immunize its own witness and refuse to immunize a defense witness. *See* 361 F.2d at 534 n. 1.

*Praetorius* also noted that, in other circuits, defense witness immunity would be required "where the government has used the threat of prosecution to wrongfully force defense witnesses to invoke the Fifth Amendment privilege against self-incrimination." 622 F.2d at 1064 (citing *United States v. Morrison,* 535 F.2d 223, 229 (3d Cir.1976)). *Morrison* re-

versed a conviction where the Government refused to immunize a defense witness whom the prosecutor had caused to invoke the self-incrimination privilege, *see* 535 F.2d at 229, and gave the Government a choice of either immunizing the defense witness at retrial or having its case dismissed, *see id.*

If no discriminatory use of immunity for Government witnesses has occurred, *i.e.,* the Government has not immunized *any* of its own witnesses, we have explicitly left open the issue of whether "under 'extraordinary circumstances,' due process may require that the government confer use immunity on a witness for the defendant," *see Praetorius,* 622 F.2d at 1064 (quoting *United States v. Wright,* 588 F.2d 31, 35 (2d Cir.1978)). *See Government of Virgin Islands v. Smith,* 615 F.2d 964, 968–74 (3d Cir.1980) (remanding for trial court determination whether immunity was required for defense witness).

In the pending case, the Appellants do not seek to require the Government to choose between either forgoing immunity for any prosecution witnesses, or else granting immunity for both prosecution and those defense witnesses whose testimony meets the criteria of our three-part test for defense witness immunity. Instead, the Appellants seek to confront the Government with the following arguably less burdensome set of choices: forgo immunizing any prosecution witnesses and offer any recalcitrant witnesses' statements that would be admissible under Rule 804; immunize all the witnesses whom either side wishes to examine at trial and forgo their statements; or immunize some prosecution witnesses but forgo offering out-of-court statements of other non-immunized witnesses. This arguably less burdensome set of choices would preclude the Government from selecting from a group of recalcitrant witnesses those who will testify favorably for the prosecution and at the same time gain the additional evidentiary benefit of favorable out-of-court statements from other witnesses whom the defense has no opportunity to cross-examine. "Even if there is no constitutional right to insist on a grant of immunity, however, elementary fairness may, in a given case, preclude use of such hearsay unless the government can show a strong reason for refusing the grant." 5 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 804.03[7][a] (2d ed. 2000).

### C. Harmlessness of Alleged Error.

 The Appellants have presented a substantial argument that the admission into evidence of the plea allocutions of the non-immunized co-defendant former employees, following the Government's selective conferring of immunity upon other former employees, is a fundamental unfairness that might well amount to a denial of due process. However, we need not adjudicate the merits of that argument because we conclude that the admission into evidence of the plea allocutions, even if error, was harmless. We have discretion to consider the harmlessness of an alleged error even though the Government has not argued this line of defense. *See, e.g., United States v. Rose,* 104 F.3d 1408, 1414 (1st Cir.1997); *United States v. Langston,* 970 F.2d 692, 704 n. 9 (10th Cir.1992); *United States v. Pryce,* 938 F.2d 1343, 1348 (D.C.Cir.1991).

In this case, the plea allocutions were offered only to prove the element of the existence of the alleged conspiracy, not the Appellants' participation in it. That element was overwhelmingly established by the testimony of the immunized former employees, who were available for cross-examination. The plea allocutions of the non-immunized former employees added nothing of significance to the proof that the conspiracy existed, and, although the allocutions provided evidence of overt acts of the non-immunized former employees, ample live testimony established overt acts of other participants. Moreover, as the District Court noted, Dolah himself "doomed whatever hopes he might have entertained that the jury might find that the government had not met its beyond a reasonable doubt requirement" by telling the jury "blatant and transparent lies on the witness stand" and by making "foolishly absurd assertions, all of which did not aid his cause." *United States v. Dolah,* 72 F.Supp.2d 235, 236 (S.D.N.Y.1999).

## II. Acceptance of Partial Verdicts

At the end of the first day of jury deliberations, the following colloquy occurred:

THE COURT: I called you in. Mr. [foreperson], have you, the jury, been able to complete any of its deliberations?

FOREPERSON: We have completed part of our deliberations.

THE COURT: Are you ready—

FOREPERSON: Can we report one charge or is that permitted?

THE COURT: If you have completed any deliberation, you may report it.

After further colloquy to advise the jury that any verdict had to be reported in writing, the foreperson retrieved the partially completed verdict form from the jury room and reported that the jury had found both defendants guilty on Count One. Judge Carter then polled the jury, determined that the partial verdicts were unanimous, and directed the jurors to resume deliberations in the morning. The next day, the jury returned guilty verdicts against both defendants on all remaining counts.

The Appellants contend that the receipt of the partial verdicts on Count One was error because Judge Carter "prompt[ed]" the jury to return them and did not caution the jury that any partial verdicts announced in open court could not later be revised. *See* Brief of Appellants at 34–35. We reject the Appellants' characterization of what occurred and conclude that the lack of cautionary advice was harmless in this case.

■ A jury is entitled to report partial verdicts as to less than all defendants, *see* Fed.R.Crim.P. 31(b), and as to less than all counts, *see United States v. DiLapi,* 651 F.2d 140, 146 (2d Cir.1981). As we have noted, juries "should be neither encouraged nor discouraged to return a partial verdict, but should understand their options, especially when they have reached a stage in their deliberations at which they may well wish to report a partial verdict as to some counts or some defendants." *Id.* at 147. An appropriate instruction should also "advise the jurors that any verdicts they choose to report will not be subject to later revision." *Id.*

The Appellants' claim that Judge Carter "prompt[ed]" the return of the partial verdicts on Count One is unfounded. After he neutrally inquired whether the jury had completed any of its deliberations, the foreperson immediately asked whether verdicts on one charge could be reported and was informed that this could be done. It is evident that the verdicts had already been voted upon because the foreperson retrieved the partially completed verdict form from the jury room while the other jurors remained in the courtroom.

■ Although it would have been preferable for the Court to advise the jury explicitly that it had the option either to report partial verdicts or to wait until deliberations were concluded, and to caution that any partial verdicts reported could not be reconsidered, the omission of such guidance was harmless in this case. The jurors' volunteered preference to return partial verdicts was clearly expressed, and they gave no subsequent indication that they wished to reconsider their partial verdicts.

## Conclusion

The Appellants' remaining contentions are without merit. The judgments of conviction are affirmed.