**UNITED STATES of America,**
**Appellee,**

v.

**Frederick WIMBLEY, aka Fredrick**
**Wimbley, Defendant,**

**Derek Joseph, aka Andrew Joseph,**
**Defendant–Appellant.**

No. 01–1048.

United States Court of Appeals,
Second Circuit.

Aug. 29, 2001.

Michael Hurwitz, Hurwitz Stampur & Roth, New York, NY, for appellant.

Boyd M. Johnson III, Assistant United States Attorney, for Mary Jo White, United States Attorney, Southern District of New York; Christine H. Chung, on the brief, for appellee.

Present MINER, CALABRESI, and CABRANES, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

Derek Joseph ("appellant" or "Joseph") appeals from a final judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) convicting him, after a jury trial, of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and of distributing and possessing with intent to distribute approximately 470 grams of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C). Joseph was sentenced to 60 months in prison, to be followed by three years of supervised release, and $200 in special assessments.

## BACKGROUND

Joseph was arrested following a car chase down Riverside Drive in Manhattan on May 11, 2000. Agents of the United States Drug Enforcement Administration ("DEA") had been conducting surveillance in upper Manhattan on an unrelated investigation. In the early afternoon, Special Agent Blake noticed a Ford Contour with North Carolina plates park a few yards in front of the car in which Blake himself was sitting. One man, later identified as Derek Joseph, was driving the car, which was carrying two passengers, who were later identified as Frederick Wimbley and William Haymon.[1] Joseph and Wimbley left Haymon in the car for three hours. During this time, Joseph and Wimbley were not being observed by DEA officers but Blake radioed his observations to other DEA agents in the area.

When Joseph and Wimbley returned, Joseph drove away, with Wimbley and Haymon in the car. Special Agent Ferry, who had received the information from Blake, noticed the Ford Contour on Riverside Drive and, after confirming with Blake that this was the same car, started to follow it down Riverside Drive. Two other DEA agents began to follow Joseph as well. Joseph soon began to drive erratically—changing lanes and speeds. At approximately 123rd Street, Joseph pulled to the side of the road and slowed, thereby enabling Wimbley to jump out of the car with a plastic bag under his arm. Two agents chased Wimbley, recovered the bag that Wimbley dropped during the chase (which contained a white substance that they believed to be crack cocaine and which turned out to be powder cocaine), and eventually caught up with Wimbley and arrested him. These agents radioed their colleagues regarding the recovery of narcotics from Wimbley. Ferry continued to chase Joseph, who drove away again after dropping off Wimbley. Ferry lost sight of Joseph's car but soon found it parked around 114th Street. After calling for backup and then questioning bystanders in an effort to locate Joseph and Haymon, Ferry and other law enforcement officers entered Crosstown Sports, a sporting goods store located one block from the parked car. In Crosstown Sports, Ferry

---

1. Wimbley was named in the indictment but Haymon was not.

found Joseph and Haymon and placed them under arrest.

In the search of Joseph incident to his arrest, officials discovered that Joseph was not carrying any identification but did have the keys to the car in his pocket. The officers took Joseph to the DEA offices, read him his *Miranda* rights, and seized a red Nokia cellular phone in his possession. According to the officers, Joseph gave the officers an incorrect name and birth date, denied knowing anything about the car chase, and stated that he had been "shopping" earlier in the day. Officials conducted an inventory search of the car. The search yielded three boxes of zip-lock bags and a roll of clear plastic wrap (items often used to package drugs for resale), a box of Downy fabric softener (a product often used to cover the smell of narcotics), a receipt for several items costing ninety nine cents (from a store which later was found to sell the bags and plastic wrap at that price), and a calculator. Also, officials found several additional cell phones with numbers contained in the directory of the red cellular phone found on Joseph. Telephone records reveal that Joseph's phone had been used to call each of the other cellular phones found in the car.

Joseph was charged with a violation of 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute cocaine, and of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), distributing and possessing with intent to distribute approximately 470 grams of cocaine. Wimbley was indicted along with Joseph but Haymon was not. Joseph challenged his arrest claiming that flight alone did not establish the requisite probable cause for arrest. Judge Scheindlin ruled in favor of the Government and accordingly permitted the evidence seized pursuant to the arrest to be introduced to the jury.

The parties then proceeded to trial. Wimbley had pled guilty to the conspiracy charged in Count One of the Indictment. The Government moved to admit, under Fed.R.Evid. 804(b)(3), the portions of Wimbley's plea allocution that helped establish the existence of the charged conspiracy.[2] The Government complied with the requirements of the evidentiary rule by showing that Wimbley was unable to testify himself since he planned to invoke his Fifth Amendment right to silence if called to testify. Further, the portion of the plea allocution submitted into evidence did not name Joseph, and the Government requested (and was granted) a limiting instruction for the jury noting that it should consider the plea only for the purposes of establishing the existence of the conspiracy and not as proof of Joseph's participation in that conspiracy.

During the trial, Joseph objected to the use of the plea allocution on several grounds. First, he claimed that the statements lacked adequate indicia of trustworthiness. Second, he claimed that some

---

**2.** Rule 804(b)(3) creates an exception to the hearsay rule for statements against interest. This circuit has recognized plea allocutions as statements against penal interests for purposes of the rule. *See, e.g., United States v. Dolah,* 245 F.3d 98, 101 (2d Cir.2001). According to the Rule, the declarant must be unavailable to testify on his own behalf, and the statement must be adequately trustworthy (by being sufficiently contrary to the interests of the declarant). The Supreme Court has recognized this exception as well and rejected Confrontation Clause challenges where only the inherently trustworthy portions of the plea have been admitted and no portion facially incriminates the defendant. *See Richardson v. Marsh,* 481 U.S. 200, 207–08, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In this context, the plea cannot be used to implicate the codefendant but can be introduced "as evidence of the existence and scope of the conspiracy." *United States v. Smith,* 198 F.3d 377, 385 (2d Cir .1999).

portions were unnecessary to demonstrate the existence of the conspiracy. The trial court ruled that it would admit those portions describing the amount and value of the cocaine in question and the statement referring to "another person" conspiring with Wimbley. According to the district court, these statements contained sufficient indicia of reliability, as required by the rule, because they implicated Wimbley in the crime (thereby exposing him to punishment) and had been made under oath.

Once all the evidence was in, Joseph brought a Rule 29 motion, claiming that the evidence against him was not sufficient to support a guilty verdict. He argued that flight alone, or flight combined with presence in a vehicle transporting cocaine, was not enough to impute to him knowledge of the existence of the cocaine. The trial court denied this motion, citing extensive evidence, circumstantial and direct, that could support a finding of guilt. The jury found Joseph guilty on both counts, and he was sentenced to 60 months in prison to be followed by 3 years of supervised release, and $200 in special assessments.

This appeal followed.

## DISCUSSION

Joseph claims that the trial court erred in permitting the Government to introduce Wimbley's plea allocution as evidence of the conspiracy. Specifically, appellant maintains that the plea allocution "clearly and directly implicated Derek Joseph." Because Wimbley's plea referred to "another person" being involved in the conspiracy with Wimbley, and Joseph was the only other person named in the indictment, this reference "implicated Derek Joseph as clearly and directly as had he mentioned him by name."

The Supreme Court and the Second Circuit have both spoken, on several occa-sions, to the permissibility of references to the defendant in plea allocutions of co-defendants/co-conspirators admitted into evidence. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the introduction of a co-defendant's guilty plea that facially incriminated the defendant violated the Sixth Amendment right to cross-examination of witnesses. The Court explicitly recognized that, in such circumstances, limiting instructions to the jury cannot counteract the prejudicial effects of the evidence. *Id.* at 135–36, 88 S.Ct. 1620. In *Richardson,* the Court considered and permitted the introduction into evidence of a redacted confession; the confession of a co-defendant, which had been "redacted to eliminate not only the defendant's name, but any reference to his or her existence," was "evidence requiring linkage" to other evidence, and therefore permissible. 481 U.S. at 208, 211, 107 S.Ct. 1702; *see also Gray v. Maryland,* 523 U.S. 185, 189–90, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) (explaining and limiting *Richardson* ).

The Second Circuit has repeatedly held that redacted confessions, in which the names of co-defendants were replaced by neutral pronouns or other neutral references, may be admitted into evidence. *See United States v. Williams,* 936 F.2d 698, 701 (2d Cir.1991) (holding that a plea referring to "another guy" does not violate the *Bruton* rule); *United States v. Alvarado,* 882 F.2d 645, 652–53 (2d Cir.1989) (holding that a redacted plea referring to "another person" was permissible under *Bruton* ); *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir.1989) ("[A] redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defen-

28

dants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights."). This Circuit has also ruled that "we view the redacted confession in isolation from the other evidence introduced at trial." *Williams*, 936 F.2d at 700. Under this holding, so long as the confession standing alone is not incriminating, even if the confession taken together with other evidence implicates the defendant, the confession may be admitted.

In *Smith*, we held that where a co-conspirator's plea referred to other co-conspirators but did not name them, it is within the district court's discretion to admit the plea into evidence, even though there is only one other person on trial for conspiracy. *Smith*, 198 F.3d at 385 (citing *Williams*, 936 F.2d 698). Joseph attempts to distinguish *Smith* based on the number of co-conspirators referred to; in *Smith*, multiple co-conspirators, in Wimbley's plea, just one. This distinction, however, cuts against Joseph's argument. The plea in *Smith* is equally, if not more, incriminating since determining that Smith was a co-conspirator would not require the jury to reject the possibility that someone else not on trial may have conspired as well. In this case, to accept Joseph as *the* co-conspirator mentioned by Wimbley meant that the jury must not believe that Haymon conspired as well, because Wimbley's plea referred to just one co-conspirator. That is, the defense could easily claim that the other person implicated by Wimbley was William Haymon, the third person in the car and the man arrested with Joseph (though never indicted), or, was another person entirely. We believe that this case is governed by *Smith* and accordingly that the admission into evidence of Wimbley's plea allocution was proper.

Joseph raises two additional claims in this appeal. First, he argues that the evidence was not sufficient to support his conviction. Second, Joseph alleges that the arresting officer did not have probable cause for his arrest. We agree with the district court, for substantially the reasons it gave, that the evidence was sufficient to support the conviction and that probable cause existed for Joseph's arrest.

We have considered all of Joseph's arguments and find them to be without merit.

The judgment of the District Court is AFFIRMED.