**UNITED STATES of America,**
**Appellee,**

v.

**Mustafa OZSUSAMLAR, also known**
**as Mustafa Ozcan, Defendant–**
**Appellant.**

**No. 07–0420–cr.**

United States Court of Appeals,
Second Circuit.

May 22, 2008.

Susan G. Papano (Scott B. Tulman, of counsel), New York, NY, for Defendant–Appellant.

David M. Siegal, Assistant United States Attorney (Ronnie Abrams, Assistant United States Attorney, of counsel), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. JON O. NEWMAN, Hon. WALKER, and Hon. SONIA SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Mustafa Ozsusamlar appeals from a judgment of the United States District Court for the Southern District of New York (Wood, J.), entered on February 2, 2007, convicting him following a jury trial of conspiracy to bribe a public official, in violation of 18 U.S.C. § 371; bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(B); conspiracy to commit fraud in connection with identification documents, in violation of 18 U.S.C. § 1028(f); fraud in connection with identification documents, in violation of 18 U.S.C. § 1028(a)(1), (b)(1)(A)(ii), (c)(3); conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324; and transportation of illegal aliens, in violation of 8 U.S.C. § 1324. The district court sentenced Ozsusamlar principally to 235 months' imprisonment and three years of supervised release. We assume the parties' familiarity with the facts and procedural history of the case.

Ozsusamlar challenges the district court's refusal to suppress evidence obtained in an encounter that lead to his arrest. He first argues that the arresting officer, District of Columbia Police Officer Justin Branson, lacked a reasonable suspicion to justify his initial contact with the motor vehicle that Ozsusamlar and several other individuals were occupying. The district court found Officer Branson's initial contact with Ozsusamlar was consensual, and thus fell outside the scope of the Fourth Amendment, *see United States v.*

---

*Peterson,* 100 F.3d 7, 10 (2d Cir.1996) (explaining that "[o]fficers may permissibly ask questions ... and may make requests for identification" without turning a consensual encounter into a seizure under the Fourth Amendment). Based on his testimony, the district court found that Officer Branson had made no threatening acts towards the defendant and did not have a threatening demeanor. Under these circumstances, where Officer Branson was alone, did not brandish his weapon, and did not make threatening acts or command compliance with his requests, *see United States v. Glover,* 957 F.2d 1004, 1008 (2d Cir.1992) (listing factors pertinent to determining whether police contact is consensual), we conclude a reasonable person would have objectively believed that he was free to leave the scene, *see United States v. Tehrani,* 49 F.3d 54, 58 (2d Cir. 1995) (explaining that an encounter is consensual so "long as the police do not convey a message that compliance with their requests is required" (internal quotation marks omitted)). Thus, the district court correctly concluded that the initial encounter was consensual for purposes of the Fourth Amendment.

Ozsusamlar next asserts that Officer Branson was unjustified in escalating the encounter to an investigative detention. In order to conduct an investigative detention, a police officer must have a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Here, Officer Branson testified that, after arriving at the vehicle, Ozsusamlar was visibly nervous—with shaking hands and stuttered speech—and that he attempted to conceal papers that Officer Branson recognized to be District of Columbia DMV forms. *See id.* at 124, 120 S.Ct. 673 (2000) (explaining that "[n]ervous, evasive behavior" is a "pertinent factor" in determining reasonable suspicion).

The front seat passenger also attempted to conceal something from Officer Branson by passing an object or placing it behind the first row of seats. Finally, when Officer Branson was calling for assistance in identifying the defendant, Ozsusamlar exited the van and began to talk to Officer Branson while the other passengers began to flee from the other side of the vehicle. *See id.* ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). At that point in time, Officer Branson ordered everyone back into the vehicle. Based on these cumulative circumstances, the district court properly found that Officer Branson had articulated more than an "inchoate and unparticularized suspicion or 'hunch' of criminal activity," *see id.* at 125, 120 S.Ct. 673, and that there was a reasonable suspicion to support an investigative detention under the Fourth Amendment.

Finally, Ozsusamlar argues for the first time on appeal that Officer Branson coerced him into releasing the DMV forms and that the forms should accordingly be suppressed. Because this objection was not raised at the district court, we review for plain error. *See Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). After the investigative detention began, Office Branson asked Ozsusamlar if he could see the DMV forms, which were located inside the van. Ozsusamlar replied "sure" and retrieved the forms for him. Ozsusamlar's argument appears to be that because he was seized at the time, he did not voluntarily consent to giving Officer Branson the documents. When an individual is seized, he may still consent to search; however, our review for the voluntariness of that consent requires a "more careful scrutiny." *See United States v. Puglisi,* 790 F.2d 240, 243 (2d Cir.1986). Even

under this more careful scrutiny, the testimony indicates that Officer Branson had a "reasonable basis for believing that there had been consent," *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir.1995). At a minimum, any lack of consent was not so "clear" or "obvious" as to qualify as plain error. *See United States v. Thomas*, 274 F.3d 655, 667 (2d Cir.2001).

For the foregoing reasons, the judgment of the district court is AFFIRMED.